# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

|  |  |  |
|---|---|---|
| **ANNETTE GUTHRIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **6:20-CV-01095-AKK** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Annette Guthrie brings this action under 42 U.S.C. § 405(g) of the Social Security Act seeking review of the final adverse decision of the Acting Commissioner of the Social Security Administration.  Doc. 1.  Guthrie argues that the ALJ's decision, which became the final decision of the Acting Commissioner, was not supported by substantial evidence because the ALJ failed to properly evaluate Guthrie's chronic knee pain and did not find that Guthrie's mental impairments precluded her from working.  *See* doc. 13 at 13–16.  After careful examination, the court finds that the ALJ's decision is due to be affirmed.

## I.

Guthrie previously worked as a dispatcher for a gas company before she ceased working due to depression and anxiety.  Doc. 13 at 2.  Guthrie filed for

disability and disability insurance benefits, alleging a disability onset of September 29, 2018, based on post-traumatic stress disorder, chronic lower back pain, spinal arthritis, severe depression, chronic knee pain, anxiety with panic attacks, insomnia, vertigo, hypertension, hypothyroidism, and carpal tunnel.  *Id.*; R. 17–18.  After Guthrie's claims were denied, an ALJ held a hearing with Guthrie, her attorney, and a vocational expert and found that Guthrie was not disabled.  Doc. 13 at 1; R. 12, 15, 26.  The SSA Appeals Council denied Guthrie's request for review, rendering the ALJ's decision the final decision of the Acting Commissioner.  R. 1.  Guthrie thereafter filed this petition for review.  Doc. 1.

## II.

The court reviews only whether (1) the record contains substantial evidence to sustain the ALJ's decision and (2) the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Under 42 U.S.C. §§ 405(g) and 1383(c), the Commissioner's factual findings are conclusive if they are supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The threshold for this evidentiary sufficiency "is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, substantial evidence falls somewhere between a "scintilla" and a

"preponderance of evidence." *Martin*, 894 F.2d at 1529; *Moore*, 405 F.3d at 1211. If substantial evidence supports the Commissioner's factual findings, then the court must affirm, even if the evidence preponderates against those findings. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020).

When determining whether substantial evidence supports the Commissioner's decision, the court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. *Id.* at 1323; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Despite this limited scope of review, however, the court must not automatically affirm the decision of the Commissioner. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Bloodsworth*, 703 F.2d at 1239. The court "retain[s] an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Courts review de novo the legal conclusions upon which the Commissioner's decision is based. *Id.* at 1103; *Moore*, 405 F.3d at 1211.

### III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

3

months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1).  A physical or mental impairment

is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrated by medically acceptable clinical and

laboratory diagnostic techniques." *Id.* § 423(d)(3).  Determinations of disability

require a five-step analysis in which the ALJ determines:

> (1) whether the claimant is currently unemployed;
> (2) whether the claimant has a severe impairment;
> (3) whether the impairment meets or equals one listed by the Commissioner;
> (4) whether the claimant is unable to perform his or her past work; and
> (5) whether the claimant is unable to perform any work in the national economy.

20 C.F.R. § 404.1520(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"An affirmative answer to any of the above questions leads either to the next

question, or, on steps three and five, to a finding of disability. A negative answer to

any question, other than step three, leads to a determination of 'not disabled.'"

*McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).[1]  If the claimant

---

[1] If a claimant's impairments do not meet or equal a listed impairment, as determined at Step Three, the ALJ determines the claimant's "residual functional capacity" on the basis of "all of the relevant medical and other evidence" in the claimant's case record.  20 C.F.R. § 404.1520(e).  *See also* 20 C.F.R. § 404.1545(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations.").  The ALJ uses the residual functional capacity at Step Four to determine if the claimant can perform past relevant work and at Step Five to determine if the claimant can adjust to other work.  20 C.F.R. § 404.1520(e).

cannot return to prior work, the Commissioner bears the burden of showing other work the claimant can do. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

Under 20 C.F.R. § 404.1520c, for claims filed on or after March 27, 2017, the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). To determine whether a medical opinion or prior administrative medical finding is "persuasive," the ALJ must focus on factors that include supportability,[2] consistency,[3] the medical source's relationship with the claimant,[4] and the medical source's specialization.[5] *Id.* § 404.1520c(c). *See also Nix v. Saul*, No. 4:20-CV-00790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021). The most

---

[2] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

[3] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

[4] This includes the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship (*e.g.*, the kinds of testing performed), and the examining relationship (*i.e.*, whether the medical source actually examined the claimant or only reviewed the claimant's file). *Id.* § 404.1520c(c)(3).

[5] "Specialization" refers to whether the medical source has received "advanced education and training to become a specialist," which may render that source's findings more persuasive than findings from a non-specialist. *Id.* § 404.1520c(c)(4). In addition, the ALJ may consider evidence showing that a medical source "has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c)(5).

important of these factors are supportability and consistency, and the ALJ must articulate how persuasive he or she finds the medical opinions and prior administrative medical findings in a claimant's record.  *Id.* § 404.1520(a)-(b).

Moreover, when a claimant seeks to establish a disability through her own testimony concerning "pain or other subjective symptoms," courts in the Eleventh Circuit apply a three-part test that requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, the ALJ must "articulate explicit and adequate reasons for doing so," and the failure to articulate the reasons for discrediting subjective testimony "requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The ALJ need not expressly refer to this test, but the ALJ's decision must indicate the standard was applied.  *See id.* at 1226.

Finally, if the record shows the claimant has a "medically determinable impairment that could reasonably be expected to produce her symptoms," the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work."  *Costigan v. Comm'r of Soc. Sec.*, 603 F.

App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). The ALJ must consider "all of the record," including the objective medical evidence, the claimant's history, and statements by the claimant and the claimant's doctors, and the ALJ may consider factors like the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of the claimant's medication; and treatments other than medication. *Id.* Last, the ALJ must examine the claimant's symptom-related testimony in relation to all of the other evidence, considering whether there are any "inconsistencies or conflicts between those statements and the record." *Id.*

## IV.

In this case, at Step One, the ALJ determined that Guthrie had not engaged in substantial gainful activity since her alleged onset date. R. 17. At Step Two, the ALJ classified Guthrie's generalized anxiety disorder, depression, PTSD, vertigo, and carpal tunnel syndrome as severe impairments.[6] *Id.* The ALJ determined that the other impairments that Guthrie alleged did not count as severe—namely, that Guthrie's discogenic degenerative change, hypothyroidism, gastritis, appendectomy, lysis of adhesions, oophorectomy, gastric bypass surgery, and restless leg syndrome either caused "minimal symptoms" or lacked evidence

---

[6] Though the ALJ did not expressly mention Guthrie's osteoarthritis in this list, later in the opinion the ALJ noted that Guthrie had been diagnosed with osteoarthritis in March 2019 and that this constituted a severe impairment. *See* R. 18.

indicating Guthrie had experienced work-related limitations in connection with these impairments.[7]  R. 18.  At Step Three, the ALJ found that Guthrie did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in the SSA regulations.  *See id.*

The ALJ determined that Guthrie had a moderate limitation in understanding, remembering, or applying information.  R. 19.  Here, the ALJ highlighted that Guthrie could prepare her own meals, sweep, dust, load the dishwasher, wash clothes, shop for groceries, take care of her pets, and comply with treatment from medical providers, although Guthrie reported that her impairments affected her memory and ability to understand and follow instructions.  *Id.*  Based on Guthrie's self-report and the opinion of Dr. Robert Estock, a state agency reviewing psychiatrist, the ALJ found that Guthrie had a marked limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing herself.  *See* R. 19–20.  The ALJ also concluded that the record failed to establish "the medical signs, symptoms, laboratory findings or degree of functional limitation required to equal the criteria of any listed impairment" and that "no acceptable medical source . . . ha[d] concluded that [Guthrie's] impairments medically equal[ed] a listed impairment."

---

[7] One issue in this appeal is whether the ALJ should have classified Guthrie's chronic knee pain as severe.  The court notes that although the ALJ did not list Guthrie's chronic knee pain when referencing her non-severe impairments, the ALJ did mention it later in the decision.  *See* R. 21.

8

R. 20.  The ALJ noted the Guthrie did not specifically allege that any of her impairments met or medically equaled the criteria of a listed impairment.  *Id.*

The ALJ also considered Guthrie's pain- and symptom-related testimony through Guthrie's disability report and her testimony at the hearing.  R. 20–21.  The ALJ noted that Guthrie listed PTSD, chronic lower back pain, spinal arthritis, severe depression, chronic knee pain, anxiety with panic attacks, insomnia, vertigo, hypertension, hypothyroidism, and carpal tunnel in her disability report.  R. 21.  The ALJ referenced that Guthrie also reported issues with her memory and her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, complete tasks, concentrate, follow instructions, use her hands, and get along with others as a result of her conditions.  *Id.*  And the ALJ acknowledged that Guthrie testified that pain in her leg and back made it difficult to squat and that her anxiety attacks had overwhelmed her to the point that she could not work.  *Id.*

While the ALJ determined that Guthrie's "medically determinable impairments could reasonably be expected to cause some symptoms and functional limitations," the ALJ concluded that Guthrie's statements about the intensity, persistence, and limiting effects of these symptoms "[were] not entirely consistent with the medical evidence and other evidence in the record."  *See id.*  In particular, the ALJ stated that Guthrie's treatment records and diagnostic imaging "[did] not indicate disabling functional limitations."  *Id.*  The ALJ discussed Guthrie's medical

appointments from February 2018 to February 2019, during which Guthrie reported chronic pain, depression, and anxiety and "was conservatively treated for her symptoms." *Id.* In March 2019, Guthrie visited the emergency room due to abdominal pain, and a computed tomography and ultrasound revealed a right pelvic mass. R. 21–22. Guthrie thereafter underwent a laparoscopic bilateral salpingo-oophorectomy, lysis of adhesions, and an appendectomy, and the ALJ stated that Guthrie "recovered well without limitations." R. 22.

In addition, the ALJ described that in May 2019, during an examination with Dr. Eric Bready, Guthrie could get up and out of her chair, get on and off the examination table, and ambulate without difficulty. *Id.* Dr. Bready also apparently detected no evidence of spinal spasm or scoliosis and found that Guthrie had normal grip strength, reflexes, motor strength, and range of motion. *Id.* Dr. Bready noted that Guthrie had some limitations in bending or stooping due to mild back pain but concluded that Guthrie "was largely within normal limits." *Id.* Likewise, the ALJ cited Dr. Krishna Reddy, a state agency reviewing physician, who considered Guthrie's medical records and determined that Guthrie could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. *Id.* On this basis, Dr. Reddy concluded that Guthrie could work at a medium level of exertion. *Id.*

Finally, the ALJ cited Guthrie's August 2019 visit to the emergency room. *Id.* During this visit, Guthrie complained of abdominal pain but apparently of no other issues. *Id.* Guthrie's examination revealed tenderness, but X-rays purportedly returned normal results. *See id.*

Turning to Guthrie's psychological conditions, in light of "the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses," the ALJ evaluated Guthrie's psychological symptoms together. R. 22. Reflecting on Guthrie's self-report, the ALJ highlighted that although Guthrie reported limitations in her memory and abilities to complete tasks, concentrate and follow directions, and interact with others, Guthrie also reported performing activities (*e.g.*, preparing her own meals, grocery shopping, and taking care of her pets) that apparently indicated she did not have disabling mental limitations. *Id.* The ALJ also referred to a May 2019 psychological evaluation by Dr. William Higgs in which Dr. Higgs concluded that Guthrie had mild functional impairments in managing self-care, executing short instructions, and managing finances and a marked limitation in maintaining socially appropriate interactions in the workplace. *Id.*

The ALJ found Dr. Reddy's opinion that Guthrie could work at a medium level of exertion consistent with the objective medical evidence, Guthrie's symptoms, and her daily activities and noted that Dr. Reddy, as a state agency

medical consultant, was a "highly qualified" "expert" in Social Security disability evaluations. R. 23. The ALJ thus concluded that Dr. Reddy was persuasive. *Id.* Likewise, the ALJ deemed Dr. Bready persuasive due to the consistency of his observations with the evidence. *Id.* On the other hand, the ALJ found Drs. Estock's, Higgs', Charles Shipman's,[8] and Joseph Marino's and Justin Anderson's[9] opinions inconsistent with this evidence and thus unpersuasive. *Id.*

Accordingly, the ALJ determined that Guthrie had the residual functional capacity to perform "medium work" with the following limitations:

> [Guthrie] can stand or walk for six hours and sit for six hours in an eight hour workday; can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; can tolerate no exposure to unprotected heights and dangerous machinery; can frequently handle, finger, and feel with bilateral upper extremities; is able to understand, remember, and carry out simple instructions and make simple work related decisions; can tolerate occasional interaction with coworkers, supervisors, and the public; can tolerate occasional changes in work setting; and can work at a consistent pace throughout the workday but not at a production rate pace where tasks must be performed quickly.

R. 20. At Step Four, using testimony provided by the vocational expert[10] at the hearing, the ALJ concluded that Guthrie could not perform her past work as a

---

[8] According to the ALJ, Dr. Shipman's opinion was inconsistent with the medical records as a whole and with Dr. Bready's examination. R. 23–24. Moreover, the ALJ noted that she was not required to credit Dr. Shipman's conclusion that Guthrie was disabled and unable to work. R. 24.

[9] According to the ALJ, Drs. Marino and Anderson evaluated Guthrie in 2016, and the SSA regulations did not require her to review evidence this far in the past. *See* R. 24.

[10] At the hearing, the ALJ asked the vocational expert to "assume an individual limited to medium work as defined in the regulations except that the individual [could] stand or walk for six hours

dispatcher given her age, education, and limitations.  R. 24.  At Step Five, the ALJ again considered the vocational expert's testimony[11] to conclude that Guthrie could perform jobs existing in "significant numbers in the national economy."  R. 25.  As a result, the ALJ concluded that Guthrie was not disabled.  R. 26.

## V.

Guthrie argues that the ALJ's decision was not supported by substantial evidence because the ALJ (1) did not find Guthrie's chronic knee pain "severe," doc. 13 at 13; (2) failed to account for Guthrie's chronic knee pain in determining Guthrie's limitations, as evidenced by Guthrie's testimony and Dr. Shipman's opinion, *see id.* at 14–15; and (3) improperly concluded that Guthrie's mental impairments did not preclude work, *id.* at 16.  The court addresses these arguments in turn.

---

and sit for six hours in an eight hour work day."  R. 55.  The ALJ specified that the hypothetical individual could "frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs" but "[n]ever climb ladders, ropes or scaffolds" or be exposed to "unprotected heights or dangerous machinery."  *Id.*  The ALJ included that the individual could "frequently handle, finger and feel with bilateral upper extremities" and "[was] able to understand, remember and carry out simple instructions and make simple work-related decisions" with "occasional interaction with coworkers, supervisors and the public" and "occasional changes in work setting."  *Id.*

[11] The expert testified that the hypothetical individual could work as a laundry worker, cleaner, or plastics products laborer.  R. 56.  The ALJ then asked the expert to assume that the individual could not work at a quick pace; the vocational expert replied that the jobs would remain the same. *Id.*  The ALJ also asked the expert to limit the exertional level to light work, permitted the individual could occasionally balance, stoop, kneel, crouch, and crawl and climb ramps and stairs (but not ropes, ladders, or scaffolds).  R. 56–57.  The vocational expert replied that the individual could serve as a small parts assembler, electronics worker, or hand packager.  *Id.*

A.

Guthrie first claims that the ALJ erred by failing to deem Guthrie's chronic knee pain a "severe impairment." *Id.* at 13. Guthrie asserts that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* (citing *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984)). And Guthrie is correct that the severeness inquiry performed at Step Two is a "threshold inquiry" that "allows only the most trivial impairments to be rejected." *Id.* at 14; *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *McDaniel*, 800 F.2d at 1031. *See also Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).

But Guthrie is incorrect that the classification of her chronic knee pain as "not severe" means that the ALJ's decision was unsupported by substantial evidence. To be sure, it is possible the ALJ did not properly consider Guthrie's testimony or Dr. Shipman's opinion about the extent to which Guthrie's knee pain limited her, and the court addresses these contentions in the next section. However, as to the argument that the ALJ must have found Guthrie's knee pain "severe," the court notes that the "finding of *any* severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe," satisfies Step Two. *Jamison*, 914 F.2d

14

at 588 (emphasis added).   Thus, "[a]ny error" at Step Two must be "harmless because the ALJ found in [Guthrie's] favor as to impairment" by determining that Guthrie's generalized anxiety disorder, depression, PTSD, vertigo, and carpal tunnel syndrome counted as severe impairments.   *Hearn*, 619 F. App'x at 895; R. 17.[12]

In other words, regardless of whether the ALJ should have determined that Guthrie's chronic knee pain was severe, the ALJ answered "yes" to the Step Two threshold inquiry and therefore proceeded to Step Three on the basis of Guthrie's other impairments.   *See Tuggerson-Brown*, 572 F. App'x at 951.   Given Guthrie's contentions, the real issue at hand is whether the ALJ properly considered Guthrie's chronic knee pain in the later steps.   *See Hearn*, 619 F. App'x at 895 (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).

## B.

To that end, Guthrie asserts that the ALJ's "failure to discuss [Guthrie's] chronic knee pain [was] not harmless error" in light of Guthrie's testimony and the opinions of Dr. Shipman.   *See* doc. 13 at 14–15.   Guthrie basically makes two arguments on this point: that the ALJ did not properly evaluate Guthrie's testimony about her chronic knee pain and that the ALJ inappropriately discredited Dr.

---

[12] *See also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(ii)) ("[T]he regulations state that the only consequence of the analysis at [S]tep [T]wo is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. . . . Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at [S]tep [T]wo.").

Shipman's opinion.  Because these arguments are intertwined, the court addresses them together.

When evaluating a claimant's testimony about pain and other symptoms, the ALJ must follow a test that requires evidence of an underlying medical condition and either "objective medical evidence confirming the severity of the alleged pain" or "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225.  If the record shows the claimant has a "medically determinable impairment that could reasonably be expected to produce her symptoms," the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work" by considering objective medical evidence, statements by the claimant and the claimant's doctors, and other factors related to the claimant's daily life, medications, and treatments.  *Costigan*, 603 F. App'x at 786 (citing 20 C.F.R. § 404.1529(c)(1)).

Here, the ALJ expressly acknowledged this test in the written decision and noted that Guthrie listed chronic knee pain as one of "the conditions that limit[ed] her ability to work."  R. 21.  The ALJ then found that Guthrie's "medically determinable impairments could reasonably be expected to cause some symptoms and functional limitations."  *Id.*  But the ALJ concluded that Guthrie's statements about the intensity, persistence, and effects of her symptoms were inconsistent with

the evidence, and Guthrie's limitations "affect[ed] [her] ability to work only to the extent [the statements could] reasonably be accepted as consistent with the objective medical and other evidence." *Id.*

The ALJ proceeded to discuss Guthrie's treatment records and diagnostic tests, and here, the ALJ discredited Dr. Shipman's opinion while comparing the opinions of Guthrie's doctors against each other, Guthrie's testimony, and her examination results. *See* R. 21–22. Specifically, the ALJ noted that Guthrie's medical appointments from February 2018 through February 2019 reflected Guthrie's reports of chronic pain, depression, and anxiety but also "conservative[]" treatment. R. 21. The ALJ cited records from Guthrie's visits to Dr. Shipman in early 2018 through mid-2019 that displayed negative findings except for what appear to read as "chronic pain," "depression," and "anxiety," *see* R. 552–57, and in some cases "tender lower back" and "RLS" (presumably, restless leg syndrome), *see* R. 558–59. *See generally* R. 546–64. Relatedly, an exam of Guthrie's leg identified no femur fracture but bony spurring and "[m]ild degenerative changes at the knee" with a "possible small intra-articular loose body at the knee." R. 565.

The ALJ next cited Guthrie's visit to the emergency room for abdominal pain, where Guthrie had "normal range of motion," *see* R. 420–22. R. 21–22. The ALJ noted that a visit with Dr. Bready in May 2019 demonstrated Guthrie had a history of knee pain but could get herself in and out of her seat and on and off of the

examination table with "full motor strength and range of motion in all her extremities," R. 534–40. *See* R. 21–22. Finally, the ALJ cited Dr. Reddy's review of Guthrie's medical records, highlighting that Dr. Reddy concluded Guthrie could work at a medium level of exertion. *See id.* (citing R. 107–15).

In light of this, the ALJ found that Dr. Reddy's opinion aligned with the objective medical evidence and Guthrie's testimony, and that despite Guthrie's knee pain, which interfered with her range of motion and ability to squat, *see* R. 40–41, Guthrie could perform and manage daily activities on her own. *See* R. 23. The ALJ also discounted Dr. Shipman's opinion that Guthrie could only stand and sit for up to 40 minutes and walk for up to 15 minutes and was limited in her ability to lift, carry, bend, squat, and kneel, *see* R. 585, given, for example, the medical records indicating Guthrie's range of motion. *See* R. 23.

The court concludes that the ALJ's decision not to fully credit Dr. Shipman's testimony and the ALJ's finding that Guthrie's chronic knee pain did not limit her range of motion to the extent described in her testimony was supported by "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211. Thus, these aspects of the ALJ's decision were supported by substantial evidence, and the ALJ's decision is not due to be reversed on this ground.

C.

Last, Guthrie argues that the ALJ should have found that Guthrie's mental impairments precluded her from working. *See* doc. 13 at 16. In support, Guthrie cites her testimony about her intense depression and anxiety, which have led to overwhelming panic attacks, and the opinion of Dr. Higgs, who concluded that Guthrie's psychological symptoms caused extreme impairments. *See id.* at 16–17; R. 570–71. The ALJ found that Dr. Higgs' opinion was unpersuasive because it was apparently inconsistent with Dr. Higgs' own evaluation, the medical records as a whole, and Guthrie's testimony about her symptoms and functioning. R. 23.

Here, the ALJ noted that Guthrie reported she could prepare her own meals, sweep, dust, load the dishwasher, wash clothes, independently handle her finances, shop for groceries, and take care of her pets. R. 22. The ALJ also highlighted that Guthrie could share details about her health with doctors, follow their instructions, and maintain good relationships with them and that Guthrie appeared comfortable during her appointments. *See id.* The ALJ then turned specifically to Dr. Higgs' mental examination, which found that Guthrie could, among other things, recall and repeat words and count backwards. *See id. See also* R. 572. The ALJ found that this evidence together contradicted Dr. Higgs' conclusion that Guthrie had disabling mental or psychological limitations. *See* R. 22–23.[13]

---

[13] More specifically, the ALJ explained:

Given Guthrie's testimony about her depression and anxiety and the records indicating her history with these conditions, the court questions the extent to which Dr. Higgs' conclusions about Guthrie's limitations were markedly inconsistent with the evidence, as the ALJ opined.  But the court is not permitted to reweigh the evidence or substitute its judgment for the ALJ's.  *Noble*, 963 F.3d at 1323.  Thus, even if the evidence preponderates against the ALJ's findings, the court must affirm the ALJ's decision if more than a scintilla of evidence supports it and a reasonable person would accept the evidence as adequate.  *See id.*; *Moore*, 405 F.3d at 1211. Because Guthrie's self-report indicated she could take care of pets, fix simple meals, perform household chores, occasionally shop, and manage her finances, *see* R. 308–11, and the ALJ could properly evaluate Guthrie's testimony and doctors' opinions

---

The undersigned finds Dr. Higgs' opinion that the claimant had a mild functional impairment in her ability to manage basic self-care, to understand, carry out, and remember short instructions, and her ability to manage finances, but marked limitations in her ability to maintain socially appropriate interactions in the workplace unpersuasive because it is inconsistent with the medical records as a whole and the claimant's symptoms and reported level of functioning. Additionally, Dr. Higgs' opinion that the claimant's psychological symptoms caused extreme functional impairment in her ability to maintain attention, concentration, and pace for two hours; maintain a regular schedule with punctuality; maintain regular work attendance without absences related to psychological issues; sustain an ordinary work routine without the need for special supervision; and seek and accept appropriately instructions and criticism from supervisors is not persuasive because it is inconsistent with Dr. Higgs' own evaluation as well as the claimant's medical records and reported level of functioning as discussed herein.

R. 23. (internal citation omitted).

in light of this evidence, *see Costigan*, 603 F. App'x at 786 (citing 20 C.F.R. § 404.1529(c)(1)),[14] the court concludes that the ALJ's decision is due to be affirmed.

## VI.

The court is mindful of Guthrie's testimony about her intense anxiety, depression, and panic attacks and the way these conditions appear to affect her ability to work.  However, because sufficient evidence supports the ALJ's decision, and the court may not substitute its judgment for that of the Commissioner, the court will affirm the ALJ's decision by separate order.

**DONE** the 19th day of November, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[14] As noted, to determine whether Guthrie's testimony about the limiting effects of her symptoms was consistent with the evidence, the ALJ was to consider "all of the record," including the medical evidence, Guthrie's history, and statements by Guthrie and her doctors.  *See Costigan*, 603 F. App'x at 786.  The ALJ may have also considered Guthrie's daily activities; the location, duration, frequency, and intensity of her pain or other symptoms; the type, dosage, effectiveness, and side effects of her medication; and treatments other than medication.  *See id.*